**UNITED STATES of America ex rel. Steve AVRAMOVICH, Appellant,**

v.

**John M. LEHMANN, Officer in Charge, Immigration and Naturalization Service, Appellee.**

**No. 12710.**

United States Court of Appeals
Sixth Circuit.

Aug. 1, 1956.

Henry C. Lavine, Cleveland, Ohio, for appellant.

Eben H. Cockley, Cleveland, Ohio (Sumner Canary, Eben H. Cockley, Cleveland, Ohio, on the brief), for appellee.

Before ALLEN and MILLER, Circuit Judges, and STARR, District Judge.

STARR, District Judge.

Avramovich appeals from an order of the district court denying his application for a writ of habeas corpus to test the legality of the order for his deportation.

Appellant, who was born in what is now a part of Yugoslavia, first entered the United States in 1911. In 1920 he returned to Yugoslavia and remained there until 1925, when he reentered the United States. In 1931 he went to Russia as one of a group under contract with the Amtorg Trading Corporation, which represented the Russian government in the United States. While in Russia he was employed as an instructor in the making and repairing of shoes. He returned to the United States in 1934 and has resided here continuously since that time. His petition for naturalization filed in the common pleas court of Summit county, Ohio, was denied in April, 1947, on the ground that his naturalization was prohibited by § 305 of the Nationality Act of 1940, 54 Stat. 1137, 1141,[1] by reason of his membership in the Communist Party of the United States.

The warrant of arrest in the deportation proceeding served on appellant in October, 1949, charged that he was an alien in the United States in violation of the Immigration Act of 1918 as amended,[2] in that after entry he was a member of an organization, association, society or group advocating the overthrow by force and violence of the government of the United States. On January 17, 1950, a hearing was held before an officer of the immigration and naturalization service and testimony taken on the charges in the warrant of arrest. It appears that appellant was granted a de novo hearing on August 9, 1950, and by stipulation the transcript and exhibits of the prior hearing were made a part of the record. The de novo hearing was reopened November 29, 1950, to permit the introduction of additional testimony, and at that time the further charge was lodged

---

1. Now 8 U.S.C.A. §§ 1424, 1427(f), 1451(c).

2. Now 8 U.S.C.A. § 1101 et seq.

against the appellant that after his entry into the United States he had been a member of the Communist party, which membership was made a specific ground for deportation by the Internal Security Act of 1950, 64 Stat. 987, 1008.

At the conclusion of the hearings, the hearing officer of the immigration and naturalization service, on the basis of evidence presented, ordered the appellant deported to Yugoslavia. The appellant's objections to the order of deportation were overruled, his appeal to the board of immigration appeals of the department of justice was dismissed, reconsideration thereof denied, and a warrant for his deportation was issued.

On July 23, 1954, appellant filed an application in the district court for the writ of habeas corpus, in which he claimed, among other things, that he was not a member of the Communist party; that the hearings on the charges against him were unfair; and that the action of the attorney general in issuing the warrant of deportation was arbitrary, capricious, contrary to law, and in violation of his constitutional rights. In his return to the application for the writ, the officer in charge of the immigration and naturalization service at Cleveland, Ohio, alleged that appellant was afforded full, complete, and fair hearings, and that the order and warrant of deportation were based upon substantial evidence. At the conclusion of the hearing the district court denied appellant's application for the writ, and he appeals.

The only question presented on this appeal is whether the evidence adduced in the deportation proceeding was sufficient to sustain the order of deportation issued pursuant to the provisions of the Internal Security Act of 1950, 64 Stat. 987, 1006, 1008. Section 22 of that act provides, page 1008:

"Any alien who was at the time of entering the United States, or has been at any time thereafter, * * * a member of any one of the classes of aliens enumerated in section 1(2) of this Act, shall, upon the warrant of the Attorney General, be taken into custody and deported * * *. The provisions of this section shall be applicable to the classes of aliens mentioned in this Act, irrespective of the time of their entry into the United States."

Section 22, 64 Stat. at page 1006, lists "aliens who are members of or affiliated with (i) the Communist Party of the United States." It appears that the foregoing provisions of the Internal Security Act of 1950 were in substance and effect incorporated into the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1251(a) (6) (C).

The evidence adduced at the hearings in the deportation proceeding, particularly appellant's own testimony, clearly established that in 1935 he joined the Communist party in Akron, Ohio, of his own free will and remained a member until 1938 or 1939; that he had a membership book indicating that he was a member of the party; that he paid dues; that he attended party meetings; that one or two party meetings were held in his store; and that he assisted a Communist party candidate in getting signatures on his election petition. He testified in substance that he supposed the Communist party in Akron which he joined was the Communist Party of the United States, and that he quit the party when he feared he would not obtain citizenship in the United States unless he quit. It also appears from his own testimony that he joined the International Workers Order, an organization designated by the attorney general as subversive and under Communist domination; that while he was a member of the Serbian group of the International Workers Order, he served as minute secretary, financial secretary, president, and trustee; and that he remained an active member of that organization until he was advised by his attorney to resign, after he had been taken into custody in the deportation proceeding. In summary, appellant by his own testimony placed himself in the class of

aliens subject to arrest and deportation upon the warrant and order of the attorney general.

 The decision of the Supreme Court in Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911, is controlling on the issues as to the sufficiency of the evidence and the validity of the warrant of deportation in the present case. In the Galvan case the court held section 22 of the Internal Security Act of 1950 constitutional, and said in part, 347 U.S. at page 528, 74 S.Ct. at page 741:

"It must be concluded, therefore, that support, or even demonstrated knowledge, of the Communist Party's advocacy of violence was not intended to be a prerequisite to deportation. It is enough that the alien joined the Party, aware that he was joining an organization known as the Communist Party which operates as a distinct and active political organization, and that he did so of his own free will. A fair reading of the legislation requires that this scope be given to what Congress enacted in 1950, however severe the consequences and whatever view one may have of the wisdom of the means which Congress employed to meet its desired end."

See also Rowoldt v. Perfetto, 8 Cir., 228 F.2d 109.

In the present case there was substantial evidence that appellant was an active member of the Communist Party of the United States, and under the provisions of the Internal Security Act of 1950 his deportation was mandatory. We recognize that deportation is a drastic measure, Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433, and that the deportation of appellant will undoubtedly cause him and his family sorrow and hardship. However, the formation of our national policies regulating the entry and deportation of aliens is entrusted exclusively to the Congress, and it is not within the scope of the judiciary to question the wisdom of the Congress in providing for the deportation of certain classes of aliens. As said by Justice Jackson in Harisiades

v. Shaughnessy, 342 U.S. 580, 590, 72 S.Ct. 512, 519, 96 L.Ed. 586, "Judicially we must tolerate what personally we may regard as a legislative mistake."

The order of the district court denying the appellant's application for the writ of habeas corpus is affirmed.